**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00180-CR**
_____

**ASHLEY NICOLE DIXON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 19-03-03237-CR

**MEMORANDUM OPINION**

A grand jury indicted Appellant Ashley Nicole Dixon for aggregate theft of monetary funds in an amount greater than $300,000, a first-degree felony, and Dixon pleaded guilty. Prior to the hearing on sentencing, Dixon filed a Motion for A New Trial asking for the trial court's permission to withdraw her plea. After a hearing on the motion, the trial court denied the motion. The trial court heard evidence for sentencing, sentenced Dixon to ten years of imprisonment, and ordered Dixon to pay $289,852.43 in restitution. In this appeal, Appellant argues that the trial court erred

1

by not allowing her to withdraw her guilty plea. For the reasons explained herein, we affirm.

## Relevant Procedure

Dixon's indictment for aggravated theft alleged that she unlawfully appropriated money in the aggregate value of more than $300,000 from at least fourteen entities between November 11, 2015 and December 7, 2018. According to the record, Dixon and her mother were involved in a scheme to defraud payroll companies for cash. In Dixon's appellate brief, Dixon describes the venture as follows:

> . . . Starting at the end of 2015 to 2016, Valeria Tennon[1] [Dixon's mother], working as a recruiter, would contact a payroll company and tell them [] she was placing people at a business and needed the payroll company to handle the payroll. The paperwork was filled out and the payroll companies would pay the employees. However, when the payroll company would bill the business, the business never paid. Once the payroll company contacted the business directly, the payroll company found out the employees never worked for the business nor did the business know Tennon.
> In 2017, Tennon and [Dixon] were no longer using a third party business but were using their own business when contacting the payroll company. They would tell the payroll company that they had a certain number of employees and the payroll company would pay the employees. However, when the payroll company would try to debit the bank account they had been provided, the account was either closed, there was a zero balance, or there were insufficient funds to cover the payroll cost. Approximately $1,301,653.10 was stolen from 13 payroll

---

[1] Valeria Tennon separately appealed her conviction to this Court. *See Tennon v. State*, No. 09-20-00095-CR, 2022 Tex. App. LEXIS 5733 (Tex. App.—Beaumont Aug. 10, 2022, no pet.) (mem. op., not designated for publication).

2

companies. This occurred over a period of approximately three years from November 2015 to November/December 2018.

At a hearing on September 23, 2019, Dixon waived her right to a jury and pleaded guilty, and the trial court admonished Dixon:

> The Court: Ms. Dixon, going off of the paperwork in front of me, you have been charged with a first-degree felony. A first-degree felony has a range of punishment of 5 years up to 99 years or life incarceration and a possible fine --
>    Fine is still up to ten?
>
> [The Prosecutor]: Yes, ma'am.
>
> The Court: Fine up to $10,000. Do you understand the charge itself, which was aggregate theft, and do you also understand the range of punishment?
>
> [Dixon]: Yes, ma'am.
> . . .
> The Court: At one point in time, your case was set for a trial. So, I will ask you now: You understand that you do have that right available to you, that you have the right to have a trial by jury on this matter?
>
> [Dixon]: Yes.
>
> The Court: And are you telling the Court today that you no longer want to have a trial?
>
> [Dixon]: Yes.
>
> The Court: Are you wanting to waive that right?
>
> [Dixon]: Yes.
>
> The Court: And you understand that if you enter a plea to the charge and if the Court accepts your plea and then postpones for a sentencing portion or sentencing phase, that you will be waiving your right to appeal the plea --

3

[Dixon]: Yes.

The Court: -- but you will retain your right to appeal the sentencing portion of your case?

[Dixon]: Yes.

The Court: Are you understanding that?

[Dixon]: Yes.

The Court: And understanding that right, along with some of the others that are in your admonitions you signed off on that I'm holding in my hand, are you wanting to go forward and enter a plea to this charge?

[Dixon]: Yes.

The Court: And Ms. [defense counsel], based on your interaction with your client, Ms. Dixon, do you believe her to be competent?

[Defense counsel]: I do, Your Honor.

The Court: Do you have any information to suggest otherwise?

[Defense counsel]: I do not.

The Court: So Ms. Dixon, to this charge of aggregate theft charged as a first-degree felony, how do you plead, guilty or not guilty?

[Dixon]: Guilty.

The Court: And are you entering that plea of guilty because you are in fact guilty and for no other reason?

[Dixon]: Yes.

The Court: Is anyone forcing you to plead guilty?

[Dixon]: No.

4

The Court: . . . Ms. Dixon, I'm going to accept your plea of guilty.

The prosecutor then told the trial court that if Dixon paid $75,000 towards restitution by October 31st, the State would recommend probation, but that if Dixon did not pay the $75,000, "the matter would be converted to an open plea with a sentencing hearing[.]"

> The Court: So at this time, you [the Prosecutor] are asking the Court not to make any finding --
>
> [The Prosecutor]: The only --
>
> The Court: -- that substantiates the guilt, but as to an actual affirmative finding, I'm looking at bond issues right now.
>
> [The Prosecutor]: Correct, no affirmative finding of guilty at this point.
>
> The Court: Okay. All right.
> Ms. Dixon, I'm going to accept your plea, and at this time I'm going to defer a finding on the actual case itself and on -- as to whether or not you are guilty or not guilty, and I'm also going to defer a finding at this time because it sounds like there are some plea negotiations that could result in a recommendation being given to the Court contingent on actions you have agreed to.
>
> [Dixon]: Okay.

The trial court continued the case for a hearing on "an agreed recommendation on sentencing or [to] set it for a future sentencing date where both sides will have an opportunity to present cases." The court assigned a presentence investigation ("PSI") later in 2019, the PSI officer made his first attempt to contact Dixon on December 30, 2019, and Dixon's first PSI interview was scheduled for January 2, 2020.

The same day Dixon pleaded guilty at the plea hearing, Dixon also signed written admonitions, a waiver of the right to a jury trial, and a judicial confession.[2] The admonitions Dixon received stated the consequences of pleading guilty, including:

> The Defendant waives the right to a trial, including the right to trial by jury and a speedy trial, the appearance and confrontation and cross-examination of the witnesses against [her], the right to remain silent, and the right to not be compelled to give evidence against [her]self (at both the guilt and punishment stages).

Dixon signed her name on the line below the admonishments and below the judicial confession. By signing the admonishments, Dixon represented: "I, Ashley Nicole Dixon, have reviewed and understand the above indicated admonishments. I am competent and aware of the consequences of the plea." Dixon also signed the judicial confession, which stated, "I judicially confess[] to committing the offense of: Aggregate Theft as charged by the indictment[.]"

On April 27, 2020, Dixon's appointed counsel filed a Motion to Withdraw. After a hearing, the trial court granted the motion and appointed new counsel. Then on November 3, 2021, Dixon filed a Motion for A New Trial, asking to withdraw her guilty plea and have her case set for a jury trial. The motion stated that Dixon

---

[2] As part of the written Waivers, Consent, Judicial Confession & Plea Agreement in this trial cause—No. 19-03-03237—the State agreed that "[t]he Defendant has agreed to plead guilty to the above named offense to an agreed sentence at a later date and at the time of the plea 18-02-01680 will be dismissed." This appeal pertains solely to cause number 19-03-03237.

had informed her attorney that she did not understand the terms of her guilty plea, and when she pleaded guilty, she believed her previous attorney had advised her that she was allowed to withdraw her plea at any time prior to sentencing. At a hearing on the Motion for New Trial, Dixon told the court that at the time she pleaded guilty, she understood that

> . . . I was pleading for a probation with restitution up front -- I think 75,000 or something like that -- and that I had 30 days to come up with it, and that way, I would be able to get the probation. If I didn't come up with the restitution, that -- my understanding is the plea wouldn't stick, and I had the right for a jury trial.

The prosecutor questioned Dixon:

> [The Prosecutor]: What did your attorney tell you that made you believe you could withdraw your plea?
>
> [Dixon]: Did I want to have a jury trial.
>
> [The Prosecutor]: She said that --
>
> [Dixon]: Do I want to have a jury trial.
>
> [The Prosecutor]: She asked you that question?
>
> [Dixon]: Yes.
>
> [The Prosecutor]: Did she say anything affirmatively that -- at what point did she ask you if you wanted a jury trial, before the --
>
> [Dixon]: After when I couldn't come up with the money for it, and I kept telling her I don't have it. . . .[W]hat I understood was the probation wouldn't stick if I didn't have it, and she said, so, you are saying you want a jury trial? and I said, Yes.

[The Prosecutor]: Okay. Is that the only thing she said to make you believe that?

[Dixon]: Yes.

Dixon's own counsel questioned her as follows:

[Defense counsel]: And when [your previous attorney] asked you, Do you want a jury trial -- is that what you said?

[Dixon]: Yes.

[Defense counsel]: What was your understanding from that -- that question?

[Dixon]: That the plea -- that I was waiting -- I didn't know I had signed to it. I thought it was -- I had 30 days to come up with the money to get it. So, when she -- when we didn't do that, she asked was I sure I wanted a jury trial. So I thought I would have to go in front of the Court and a jury.

[Defense counsel]: She didn't advise you, you had a right to a jury trial. She said, Do you want a jury trial? and you took that to mean, I have a right to a jury trial?

[Dixon]: Yes.

Dixon also testified that she had started the process of the presentence investigation on or about January 21, 2020.

Dixon's previous attorney, who was her attorney at the time of the plea hearing, also testified at the hearing on Dixon's Motion for New Trial and request to withdraw her guilty plea:

[The Prosecutor]: Prior to the entry of the plea on September 13th, 2019 (sic), did you tell [Dixon] that she could withdraw it?

8

The Court: September 23rd. Sorry.
  You may answer that question.

[Previous defense counsel]: Thank you, Judge.
  No, I did not.
. . .
[Defense counsel]: Did Ms. Dixon tell you she wanted to withdraw her plea?

[Previous defense counsel]: I believe sometime in March she did.

[Defense counsel]: And was your response, Do you want a jury trial?

[Previous defense counsel]: My response was -- I was asking her is that what she's saying. Is she saying she wants a jury trial?

The State offered into evidence a copy of the written admonishments signed by Dixon.

The trial court denied the Motion for New Trial. After hearing evidence on sentencing on June 2 and 3, 2022, the trial court found Dixon guilty, sentenced Dixon to ten years of imprisonment, and ordered that Dixon pay $289,852.43 in restitution. This appeal followed.

## Issue

In a single issue on appeal, Appellant argues that the trial court erred by not allowing her to withdraw her guilty plea. According to Appellant, her plea was involuntary because she did not understand the terms of her guilty plea, and she understood her trial counsel to say that she was allowed to withdraw her plea at any time prior to sentencing.

## Standard of Review

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). "The test for abuse of discretion is [] whether the trial court acted without reference to any guiding rules or principles." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). We will not substitute our judgment for that of the trial court; rather, we must decide whether the trial court's decision to deny the motion was arbitrary or unreasonable. *See Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). We view the evidence in the light most favorable to the trial court's ruling, deferring to its credibility determinations, and presuming all reasonable factual findings that could have been made in support of its ruling. *See Thomas*, 428 S.W.3d at 103-04. We review a trial court's ruling on a request to withdraw a guilty plea under an abuse of discretion standard of review. *See Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1970).

## Applicable Law

A guilty plea is a waiver of several constitutional rights, including the right against self-incrimination, the right to a speedy and public trial by jury, and the right to confrontation. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). When the defendant voluntarily pleads guilty to an indictment, the defendant may withdraw the plea "as a matter of right without assigning reasons until such judgment has been

pronounced or the case has been taken under advisement." *Jackson*, 590 S.W.2d at 515; *Tennon v. State*, No. 09-20-00095-CR, 2022 Tex. App. LEXIS 5733, at *23 (Tex. App.—Beaumont Aug. 10, 2022, no pet.) (mem. op., not designated for publication) (citing *Jackson*, 590 S.W.2d at 515; *Barlow v. State*, No. 09-17-00027-CV, 2018 Tex. App. LEXIS 1703, at *4 (Tex. App.—Beaumont Mar. 7, 2018, no pet.) (mem. op., not designated for publication)). "After a trial court has admonished a defendant, received the plea and evidence, and passed the case for a pre-sentence investigation, the case has been taken under advisement." *Houston v. State*, 201 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Jagaroo v. State*, 180 S.W.3d 793, 802 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see also DeVary v. State*, 615 S.W.2d 739, 740 (Tex. Crim. App. 1981); *Tennon*, 2022 Tex. App. LEXIS 5733, at *23; *Stewart v. State*, 680 S.W.2d 513, 514 (Tex. App.—Beaumont 1984, pet. ref'd). While a defendant may no longer withdraw their plea as a matter of right when the trial court has taken the case under advisement, the trial court may—but is not required to—allow the defendant to withdraw the plea even after it has taken the case under advisement.[3] *See Jackson*, 590 S.W.2d at 515;

---

[3] Appellant did not argue in her Motion for New Trial, nor does she argue on appeal that the trial court did not take the case under advisement at the plea hearing after Appellant entered her guilty plea. *See, e.g.*, *Saldana v. State*, 150 S.W.3d 486, 490-91 (Tex. App.—Austin 2004, no pet.) (finding no abuse of discretion by the trial court in refusing to permit the withdrawal of a guilty plea in part because appellant had not argued he was denied the right to withdraw the plea because the case had not been taken under advisement).

11

*Stewart*, 680 S.W.2d at 514. At that point, it is within the trial court's discretion to accept or reject the defendant's request to withdraw the guilty plea. *See Jackson*, 590 S.W.2d at 515; *McWherter v. State*, 571 S.W.2d 312, 313 (Tex. Crim. App. 1978).

Analysis

In this case, the record reflects that the trial court verbally admonished Dixon of the consequences of pleading guilty, received her plea, and took the case under advisement while awaiting a probation officer's investigation and report addressing Dixon's sentence. Dixon signed the written admonishments as well as a judicial confession. "It is well settled that a judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea, . . . and to satisfy the requirements of Article 1.15[.]" *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1980) (op. on reh'g) (citing Tex. Code Crim. Proc. Ann. art. 1.15[4]).

When the record shows that the trial court gave a proper admonishment, there is a prima facie showing of a knowing and voluntary plea of guilty. *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *Ex parte Arjona*, 402 S.W.3d 312, 318 (Tex. App.—Beaumont 2013, no pet.) ("The admonishment is a prima facie showing that the guilty plea was knowing and voluntary."). "When a

---

[4] Article 1.15 provides that a defendant may be convicted of a felony without a jury trial provided the defendant has entered a guilty plea in open court and waived the right to a jury trial, if the trial court approves the waiver in writing. *See* Tex. Code Crim. Proc. Ann. art. 1.15.

defendant enters into a plea, attesting that she understands the nature of her plea and that it is being made knowingly and voluntarily, she has the burden on appeal to show that her plea was involuntary." *Briggs v. State*, 560 S.W.3d 176, 187 (Tex. Crim. App. 2018). Therefore, we must determine whether Dixon has met her burden to demonstrate that her plea was involuntary.

At the plea hearing, Dixon told the trial court that she no longer wanted to have a trial and she wanted to waive that right. She also told the court she was pleading guilty because she was guilty and that no one was forcing her to plead guilty. She signed a judicial confession and waiver of her right to a jury trial, which was also signed by the trial court and entered into the record. Therein, her attorney agreed that she had reviewed and explained all the admonishments to Dixon and that she believed Dixon was competent and aware of the consequences of the plea. The trial court admonished Dixon on the record, accepted Dixon's plea, and continued the case pending receipt of the PSI report. The PSI was assigned about a month following the plea hearing. The verbal and written admonishments constitute prima facie evidence that Dixon's plea was knowing and voluntary. *See Ex parte Gibauitch*, 688 S.W.2d at 871; *Ex parte Arjona*, 402 S.W.3d at 318.

More than two years after Dixon had entered a guilty plea at the plea hearing, Dixon filed a Motion for New Trial asking to withdraw her guilty plea and have her case set for a jury trial, stating she did not understand the terms of her guilty plea.

13

At the hearing on the Motion for New Trial, Dixon testified that she thought she could withdraw her guilty plea and have a jury trial because her counsel at the time of the plea hearing had asked her "[d]id [she] want to have a jury trial[.]" According to Dixon, her belief was based only on this question and her attorney did not say anything else to make her believe she could withdraw her plea. Dixon's counsel at the time of the plea hearing (who had subsequently withdrawn for reasons not apparent from the record) also testified that prior to Dixon's entry of her guilty plea, she did not advise Dixon that she could withdraw the plea. The attorney also testified that Dixon told her "sometime in March" that she wanted to withdraw her guilty plea, and the previous counsel "ask[ed] her is that what she's saying. Is she saying she wants a jury trial?"

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in refusing to permit Dixon to withdraw her guilty plea and have a jury trial. *See Thomas*, 428 S.W.3d at 103-04. The court had admonished Dixon of the consequences of pleading guilty on the record and in writing, the trial court had received the plea and evidence of Dixon's guilt, and the court had continued the case pending receipt of the PSI report. Therefore, the trial court had taken the case under advisement, and Dixon no longer had the right to withdraw her plea as a matter of right. *See Jackson*, 590 S.W.2d at 515; *Tennon*, 2022 Tex. App. LEXIS 5733, at *23; *Houston*, 201 S.W.3d at 218;

14

*Stewart*, 680 S.W.3d at 514. Dixon has not met her burden to show that her plea was involuntary, and the trial court did not abuse its discretion in denying Dixon's Motion for New Trial and not allowing her to withdraw her guilty plea entered more than two years earlier. *See Briggs*, 560 S.W.3d at 187; *Thomas*, 428 S.W.3d at 103.

We overrule Appellant's issue, and we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on March 30, 2023
Opinion Delivered April 5, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.